Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**KALIELGOLD PLLC**
Amanda Rosenberg
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783
*arosenberg@kalielgold.com*

*Counsel for Plaintiff and the Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

REBECCA OLIVER, on behalf of herself and all others similarly situated,

Plaintiff,

vs.

MACY'S, INC. and TARMO LLC,

Defendants.

Case No. 26-cv-7824

**CLASS ACTION COMPLAINT**

## INTRODUCTION

1. This is a consumer protection class action arising from Defendants Macy's Inc.'s ("Macy's") and Tarmo, LLC's ("Tarmo") deceptive marketing, sale, and administration of a furniture protection plan known as the "WorryNoMore Warranty."

2. Macy's markets the plan—which often costs hundreds of dollars based on the sale price of the furniture—as providing "peace of mind," comprehensive repair or replacement coverage in the event of accidents like stains or damage, and in the case of structural defects on furniture items purchased at Macy's, including sofas, chairs, beds and tables. These marketing representations are material to consumers' decisions to purchase the WorryNoMore Warranty,

3. Those representations are false. In fact, Tarmo, which administers the plan, engages in a concerted effort to wrongfully deny valid claims made by consumers who purchase the plan. As described further herein, Tarmo designs and administers the warranty to systematically deny valid claims, rendering the "coverage" effectively worthless.

4. Macy's knows the warranty is a sham, but profits handsomely by selling such warranties to its customers. On information and belief, Macy's trains, instructs, and incentivizes its sales associates to affirmatively promote and "push" the WorryNoMore warranty at the point of sale—providing brochures, talking points and scripts that falsely emphasize the supposed breadth of WorryNoMore coverage and supposed ease of claims processing and payment.

5. These sales practices are deceptive because, at the time of Macy's in-store marketing of the plan as reliable and comprehensive, Macy's knows that Tarmo, the entity responsible for administering claims, uses systems and claims procedures designed to routinely deny valid claims—including through pretextual reliance on inapplicable exclusions designed to frustrate coverage.

6. Macy's knows that Tarmo does not actually provide reimbursement for common accidents, spills, or tears/rips – or for structural defects, as the marketing provided by Macy's promises.

7. Macy's long-standing relationship with Tarmo, coupled with the volume of consumer complaints and claims data available to Macy's, provides Macy's with actual or constructive knowledge that consumers who purchase the WorryNoMore warranty are unlikely to receive the promised benefits.

8. Despite this knowledge, Macy's continues to market the warranty as a valuable add-on and directs its salesforce to present it as such, while omitting material facts regarding the high likelihood of claim denial and the restrictive exclusions used by Tarmo.

9. Consumers are thereby induced to purchase the warranty through uniform misrepresentations and omissions regarding the true nature of coverage, the claims process, and the likelihood that valid claims will be honored.

10. Tarmo violates the terms of the plans purchased by consumers, and engages in deceptive and unfair practices that render Macy's WorryNoMore marketing false. Specifically, the marketing and the plans' fine print terms both expressly promise that consumers' claims for accidental damage and/or structural defects, including defective motors and reclining mechanisms, will be paid. But Tarmo denies such claims routinely, in violation of the express terms of the plans and in contravention of marketing promises.

11. Moreover, Tarmo's claims process is designed to confuse and deceive consumers with incomplete and misleading drop-down menus and limited incident description options—all designed to trick consumers into providing information that Tarmo's AI and other electronic systems can use as a pretextual basis to deny claims.

12. Plaintiff seeks damages in the form of restitution, including refunds of amounts paid for WorryNoMore plans by Plaintiff and class members, claim amounts wrongfully denied, and as injunctive relief to prevent Defendants' ongoing deceptive practices, and any other relief the Court deems just and proper.

## PARTIES

13. Plaintiff Rebecca Oliver is a resident and a citizen of Annapolis, Maryland.

14. Defendant Macy's, Inc. is a corporation that markets and sells furniture nationwide. Macy's maintains its corporate headquarters at 151 West 34th Street New York, New York 10001. Alongside the sales of its furniture, Macy's pushes its "WorryNoMore" warranty.

15. Defendant Tarmo LLC administers the WorryNoMore program, including claims handling and coverage determinations. Tarmo LLC is headquartered at 77 S Flagler Dr Ste 500, West Palm Beach, Florida 33401. Upon information and belief, Tarmo LLC is the only member of its LLC.

## JURISDICTION AND VENUE

16. This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member, including named Plaintiff, of the proposed Class resides outside New York; and (3) the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Macy's is subject to personal jurisdiction here and regularly conducts business in this District, purports to have its headquarters in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. The WorryNoMore Warranty Is Marketed by Macy's with False Promises

18. Macy's is a large department store with both an online and physical presence.

19. Macy's sells mid-range, mass-market home furniture, with a mix of exclusive in-house collections and third-party brands.

20. Shoppers are drawn to the wide selection of living room, bedroom, and dining collections, frequent promotions and bundled deals, in-store design assistance, and the perceived reliability of buying from an established national department store, all of which create an expectation of quality, service, and post-purchase support that makes the overall experience feel easier and more secure than purchasing from lesser-known or online-only sellers.

21. When a consumer determines to buy a piece of furniture, the consumer is offered at the point of sale the opportunity to purchase a warranty for the furniture. On information and belief, the purchase price of the Warranty amounts to a percentage of the amount of the furniture purchased. This means that the Warranty often costs several hundred dollars.

22. At the point of sale, Defendants represent in brochures that the WorryNoMore warranty covers accidental damage like spills or tears, defects, and other common issues. On information and belief, Macy's trains, instructs, and incentivizes its sales associates to affirmatively promote and "push" the WorryNoMore warranty at the point of sale, emphasizing its breadth of coverage and ease of claims handling.

23. Consumers who purchase in -store are given the pamphlet shown below which represents that the WorryNoMore program covers, for 5 years, accidental stains, accidental pet stains, limited accidental pet damage, rips, tears, punctures, water rings, burn marks, zippers, tufting, loose seams and stitching, cracking and peeling of leather, wood scratches that penetrate

the finish, warping of wood and metal, cracking and breaking of wood, cracking, peeling, and lifting of laminate, drawer glides and hardware, glass breakage, loss of silvering on mirrors, structural component failure, reclining mechanisms and metal legs, electrical/lighting components, defective motors, massagers and heaters:




Ex. A.

24. Thus, Consumers are reasonably led to believe the warranty provides meaningful protection and repair or replacement of each and every one of the issues in the above brochure—providing peace of mind in the event the furniture sustains accidental stains, damage, degradation or structural failure during the coverage period.

25. The brochure lists no exclusions or limitations on such issues and does not state that "wear and tear" damage is excluded from coverage.

26. At the point of sale, consumers are not presented with Defendants' fine print Terms and Conditions for the plan until after a sale has been consummated.

## II. The WorryNoMore Warranty Does Not Perform as Marketed for Two Reasons: (1) Tarmo Unfairly and Unreasonably Exploits Fine-print Exclusions, and (2) Tarmo Uses a Deceptive and Unfair Claims Process to Pretextually Deny Claims

## III.

### A. Tarmo Unfairly Exploits Vague Contract Terms

27. The promises made by Macy's in the WorryNoMore marketing—including the worry-free coverage for twenty different common accidents or problems, in the pamphlet in discussed above, *supra*, are confirmed in the official Terms and Conditions given to consumers well after the sale of the warranty is consummated. The Warranty is a standardized contract drafted by Tarmo.

28. The WorryNoMore Warranty identifies Tarmo, LLC as the "provider" of the plan for consumers located in Alabama, Alaska, California, Connecticut, Delaware, District of Columbia, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Maine, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, North Dakota, New Hampshire, New Jersey, Nevada, New York, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Wisconsin, and West Virginia.

29. The WorryNoMore Warranty provides the following Coverage for accidental stains and/or damage on Fabric, Microfiber, Coated Fabric, A & P Leather, Bonded Leather, Bycast Leather, Bicast Leather, Vinyl, Wood, Glass, Laminates, Metal, Stone and other hard surfaces resulting from: **(1) Accidental Stains or Damage** (excluding abuse, neglect, gradual buildup of

dirt, body oils, and/or perspiration); and (2) **Structural Failures** including those due to a defect in materials and workmanship during normal residential use.

30. Tarmo's promises standing alone are consistent with the marketing promises provided to consumers prior to purchase.

31. But unlike the Macy's marketing, the WorryNoMore Warranty also contains a large list of exclusions of coverage. The Warranty uses vague terms such as "wear and tear"; "gradual deterioration"; "loss of resiliency"; and "cosmetic damage."

32. These purported exclusions, if exploited in an aggressive and unfair manner by Tarmo, could entirely neuter the marketing promises made prior to sale.

33. For example, the marketing brochure promises that "all accidental stains" are covered. At the same time, "cosmetic damage" is listed in the fine print as an exclusion. Is a "stain" considered "cosmetic damage" that is excluded? Only Tarmo knows.

34. For example, the marketing brochure promises that "rips, tears and punctures" are covered. At the same time, "wear and tear" and "cosmetic damage" is listed in the fine print as an exclusion. Is a "rip, tear or puncture" considered "wear and tear" or "gradual deterioration" that is excluded? Only Tarmo knows.

35. For example, the marketing brochure promises that "seams and stitching that have come loose" are covered. At the same time, "wear and tear" and "cosmetic damage" is listed in the fine print as an exclusion. Is a "seam that has come loose" considered "wear and tear" or "cosmetic damage" that is excluded? Only Tarmo knows.

36. For example, the marketing brochure promises that "defective motors" are covered. At the same time, "wear and tear" is listed in the fine print as an exclusion. Is a "defective motor" considered "wear and tear" that is excluded? Only Tarmo knows.

37. There are numerous other potential examples, all pointing to the same truth: if read aggressively and unfairly, the listed exclusions effectively swallow the entirety of the coverage promised in marketing and in other portions of the contract. And that is exactly what Tarmo does.

38. As described herein, Tarmo unreasonably, unfairly and abusively defines such terms in a slippery and overbroad manner, effectively using such exclusions as a basis to deny valid claims. This abuse of discretion in defining these exclusions render the warranty illusory.

**B. Tarmo's Claims Portal is Deceptively and Unfairly Designed to Deny Claims**

39. In order to further support their scheme to deny valid claims, Defendants' claims-handling process has been designed not as a neutral mechanism for evaluating coverage, but rather as a system deliberately designed to channel consumers into claim categories that will predictably result in denial. This process reflects a coordinated scheme between Macy's and Tarmo to minimize payouts while continuing to market the plan as comprehensive.

40. When a consumer seeks to submit a claim, they are directed to www.warrantyservice.com, a centralized portal controlled and/or administered by Tarmo. The structure and sequencing of this website is designed to elicit responses that can later be used by Tarmo's Artificial Intelligence and other electronic system(s) as a basis for denial, rather than to accurately capture the nature of the consumer's claim.

41. The website uses limited, contradictory and misleading prompts and drop-down menus to trick consumers into misdescribing their accidental damage, structural failure, or other issues.

42. Where the brochure lists twenty common accidents, issues or problems, the claims portal provides virtually none of those options, instead offering a decision tree of extremely limited options from which consumers are to choose.

43. As described above, the Warranty *but not the marketing brochure* uses vague terms such as "wear and tear"; "gradual deterioration"; "loss of resiliency"; and "cosmetic damage" as exclusions from coverage.

44. The claims portal lists even fewer options for consumers to select.

45. At the outset, the website asks consumers whether the furniture issue occurred during delivery or prior to delivery. This question is misleading and immaterial to many covered claims, including structural defects. On information and belief, selecting any response indicating any post-delivery use whatsoever predisposes the claim to denial under pretextual exclusions such as "wear and tear" or "loss of resiliency."

46. Next, when prompted to identify the type of issue, consumers are limited to selecting "Stain" or "Damage." The claims interface entirely omits any option corresponding to "structural or component failure," despite that category being expressly covered under the written terms of the warranty.



47. For consumers like Plaintiff with clear cut instances of structural or mechanical failure or other manufacturing defects like poor stitching, or cracking or defective components, this incomplete first step of the decision tree forces them to pick from required answers that do not accurately cover the issue—forcing consumers to select incomplete options that will predispose their claims to denial. Subsequent options in the claims portal also omit any option to select structural or mechanical failure or other manufacturing defects like poor stitching, or cracking or defective components. For example, when consumers are asked to identify the *cause* of the issue, the website presents a list of options that do not include structural failure or defects in materials or workmanship. Instead, consumers are forced to select from categories such as "wear and tear" or "normal use."

48. Even for other consumers who have actually suffered a "stain" or "damage," subsequent options in the claims portal are designed to be deceptive. For example, when consumers are asked to identify the *cause* of the issue, the website presents a list of options that do not include "accident" or any of the other twenty listed issues from the marketing brochure. Instead, consumers are forced to select from categories such as "wear and tear" or "normal use."

49. But "wear and tear" *is* normal use – that is its definition.

50. Tarmo's hope is to funnel consumers into selecting "wear and tear," in order to deny those claims:




51. As a result, consumers are funneled into selecting the closest available option, often "wear and tear," without being informed that doing so will be used as a basis to deny their claim—even where the underlying issue plainly constitutes a covered structural failure, damage, or other covered issue.

52. Only Tarmo knows – and consumers do not know – that if they can get a claimant to choose "wear and tear" from a drop-down menu, it can automatically deny the claim.

53. "Wear and tear" and "normal use" are in actuality synonymous – but Tarmo provides them as separate options in a menu. Why? In order to drive people to select an option that can be used against them.

54. A "stain" is obviously an accident, not the normal degradation that comes with normal use. Why then is "wear and tear" shown as an option for a consumer who selects "stain?" To encourage individuals to choose an option that may be used against them.

55. A "defected mechanism" is by definition not the result of the normal degradation that comes with use of an item ("wear and tear"), but rather entirely different. Why then is "wear

and tear" shown as an option for a consumer who selects "defected mechanism?" To drive people to select an option that will be used against them.

56. In sum, the portal menus are designed to elicit incorrect or contradictory answers, which Tarmo then uses to deny claims.

57. Consumers have no idea what these terms used in the claims portal mean, or even that they will be the basis for exclusion. Yet Tarmo's entire claims submission portal is designed to elicit consumers to select answers from drop-down menus that it can use to force the claim into one of the excluded categories.

58. In short, the more consumers that Tarmo can get to select for example "wear and tear"—a term that itself is never used in the marketing documents—the more claims it can deny—even though such denials contradict marketing promises and the plain terms of the contracts.

59. Although the website permits consumers to provide a written description of the issue, on information and belief, Defendants do not meaningfully review these descriptions. Instead, Defendants rely on automated or semi-automated systems, including artificial intelligence, to generate standardized denial decisions based primarily on the pre-selected categories, rather than the substance of the claim.

60. This process ensures that claims for covered conditions, like structural defects, are systematically mischaracterized and denied. The design of the claims interface, combined with automated denial practices, renders the promised coverage illusory and operates as a post-sale mechanism to effectuate Defendants' deception.

**III. In Contravention of Marketing Promises and Contract Terms, Defendants Routinely Deny Valid Claims Like Plaintiff's**

61. On or about September 29, 2019, Plaintiff visited a Macy's store located at 151 West 34th Street, New York, New York to purchase a queen mattress, box spring, and Bedgard encasement to be delivered to her home in Maryland. Along with the purchase of those items, Plaintiff purchased a WorryNoMore Warranty for $94.00.

62. At the point of sale, a Macy's sales associate—whose identity is known to Defendants but not presently known to Plaintiffs—affirmatively promoted the WorryNoMore Warranty to Plaintiff, showed her the "Coverage Highlights" brochure described above at the time of purchase, and represented to her that the plan would cover, among other things, "accidental stains.".

63. In direct reliance on the brochure and the sales associate's oral representations described above—and specifically because she understood the plan to cover accidental stains — Plaintiff purchased the WorryNoMore Warranty for all furniture bought at the point of sale on September 29, 2019.

64. Plaintiff does not recall being presented with the Terms and Conditions at the point of sale. The Terms and Conditions associated with the WorryNoMore Warranty purchased by Plaintiff were acquired from Defendants' website when attempting to make a claim. See Ex. B. The Terms and Conditions specifically state:

> COVERAGE FOR ACCIDENTAL STAINING OR DAMAGE TO BEDGARD® MATTRESS PAD PROTECTOR AND/OR STAINING OF YOUR NEW MATTRESS PURCHASED IN CONJUNCTION WITH YOUR BEDGARD MATTRESS PAD/PROTECTOR • ALL Accidental Stains (excluding accumulation defined as a gradual buildup of dirt, dust, body oils and perspiration that cannot be attributed to a single occurrence).

**Ex. B**.

65. Plaintiff would not have purchased the WorryNoMore Warranty had she known that Defendants intended to treat single occurrence "accidental stains" as "accumulation of stains" and "normal use."

66. On or about September 11, 2023, Plaintiff discovered an accidental stain occurred to Plaintiff's mattress as a result of an involuntary discharge of body fluid. Soon thereafter, Plaintiff submitted a claim understanding that "accidental stains" were covered in reliance on both the brochure and Terms and Conditions promise to cover "accidental stains" (See Ex. A, B).

67. During the online claims process, Plaintiff was not provided with any option to identify the issue as an "accidental stain." She was confused by the limited prompts provided. She was forced to select from inapplicable categories and ultimately selected "accumulation of stains" as the closest available option.

68. Plaintiff then received a denial of the claim, stating that the issue was not covered because it resulted from "accumulation of stains" or "normal use."

69. On information and belief, this denial was generated through an automated or artificial intelligence-driven process that relied on Plaintiff's forced selection of "accumulation of stains," while disregarding the actual substance of the claim and the Warranty's express coverage for accidental stains. See Ex. B.

70. On or about October 5, 2023, Plaintiff submitted a dispute clarifying that the stain was the result of an involuntary discharge of body fluid.

71. On or about October 10, 2023, Plaintiff was informed that the single accidental stain was covered, but "soiling" was not covered. The WorryNoMore Warranty defines "soiling" as "a gradual buildup of dirt, dust, body oils and perspiration that cannot be attributed to a single occurrence."

72. On or about October 19, 2023, Plaintiff was issued a new claim number related to the same incident. Shortly thereafter, on October 25, 2023, Plaintiff was informed that her claim was denied because it was filed more than 15 days after discovery, even though the original claim was reported within 15 days of discovery of the accidental stain.

73. On October 25, 2023, influenced by the technological denials that came before, a representative for the WorryNoMore Warranty verbally told Plaintiff over telephone that the claim was denied, but this time because the photos submitted did not show a stain.

74. Defendants' denial of the claim was pretextual and contrary to the terms of the Warranty. The denial was not the result of a good-faith evaluation of coverage, but rather the predictable outcome of a claims process designed to manufacture grounds for denial.

75. As a direct and proximate result of Defendants' conduct, Plaintiff did not receive the benefit of the bargain for which she paid and has been left with a stained mattress.

76. Online consumer complaints show that Plaintiff's concerns are far from unique, and that Defendants instead engaged in a systematic scheme of automatically denying valid claims. Below is just a small sampling of consumer complaints:

> I filed the dispute last night. It was denied with a long email at 1:30 am eastern time, within 2 hours of filing the dispute. That was the second clue it's AI driven. The first clue was that it's just so obviously a single water mark stain. So either it's AI or they are trained to deny claims as default.[1]
>
> I had bad experience with them as well. It's completely not worth purchasing. Every claim got denied.[2]

---

[1] https://www.reddit.com/r/MacysStores/comments/1oj6hex/macys_scam_warranty_worrynomore/ (last accessed April 17, 2026).

[2] *Id*.

My couch has a broken frame which they have labeled a “loss of resiliency” even though a frame, by definition, is a structural issue. At no point did they apply the facts or evidence present to justify their denial. This insurance is an absolute scam.[3]

I filed a similar claim about stains …The whole thing is scam.....MACY needs to stop selling it or enforce the claims.[4]

Purchased this ridiculous warranty. Never again and no more furniture purchased from Macy's. Two-year-old couch in pristine condition. Not a stain, sag, or signs of use. It is a white couch, and if it was abused or worn, it would be obvious. The couch is in otherwise mint condition.A cushion seam split at the seam. It is in the center of the cushion, in plain sight. We followed the procedure, uploaded pictures, and submitted the claim. They denied it and stated it was 'normal wear and tear.' The couch is barely used.We disputed the denial, and they then replied, 'The seam is not really splitting; it's fraying. Fraying is not covered.[5]

Absolute scam. We were sold this protection plan, and now we went to file our first claim, and the company is refusing to cover it. And trying to get our money back or the promised voucher for not using the service is not possible. It is impossible to speak with anyone on the phone or get information as to why our accident stain, which is supposed to be covered, isn't.[6]

The warranty supposedly covers accidental scratches to furniture. When I filed a claim, they denied it for not being accidental. Because I would purposely go ahead and scratch my couch?![7]

The stitching on the center section of my couch came undone and I was told fixing that isnt covered, they called if a loss of resiliency and then defined loss of resiliency as when the foam/fiber of the couch cushions becomes mishapen. I provided many pictures and videos and they just do not give a ***[8]

I purchased a reclining sectional sofa from Macy's at the Elmhurst location in 2023. The mechanics of the reclining stopped working. I filed a claim and the claim was denied. Without the reclining mechanism, the sofa does not operate.[9]

This company is a complete joke. After you submit that claim, their website doesn't allow you to submit ANY other claims for that piece of furniture. After our mattress started severely sagging after two years (it's supposed to be a firm Purple mattress

[3] *Id*.
[4] *Id*.
[5] https://worrynomore.pissedconsumer.com/review.html (last accessed April 17, 2026).
[6] *Id*.
[7] *Id*.
[8] *Id*.
[9] *Id*.

- and there are well-documented problems with the Purple grid failing) - and even though their web portal clearly shows that our policy covers defects in material - they simply replied back and said 'this is not covered'. Good luck trying to get a hold of anyone in customer service.[10]

BUYER BEWARE!!!! I bought a $4k sectional and paid $500 for the warranty. The worry no more warranty is horrid. Also I was told if the warranty wasn't use at all at the end we could ask for a total refund of the warranty. When I did try to use the warranty my claim of poor craftsmanship was labeled as normal wear and tear. Cushion covers coming unstitched is not normal wear and tear it's poor craftsmanship… Do not fall for the warranty and honestly be very careful with purchasing any furniture…[11]

Getting ahold of customer service is a joke! We were told our warranty, worry no more, did not cover broken frames. We paid for the repair and found out they do cover. We have tried and tried to get ahold of someone in Macy's furniture and it's all automated bots. Automated idiots. Idiots without brains so you are not able to submit a claim.[12]

They deny warranty for insufficient and erroneous reasons--you pay for the "worry no more" warranty and all claims are denied. They normally don't answer the phone and only work through text messaging so you can talk to an agent. I never heard back from them when I told them the reason they denied the claim was not accurate. When I call Macy's, they just send me back to "worry no more".[13]

## CLASS ALLEGATIONS

77. Plaintiff brings this action on behalf of himself, and all others similarly situated persons. The proposed classes are defined as:

All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, filed a claim pursuant to Defendants' WorryNoMore Warranty and were denied.

78. Excluded from the Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and

---

[10] *Id.*
[11] https://www.consumeraffairs.com/furniture/macy.htm (last accessed April 16, 2026).
[12] *Id.*
[13] *Id.*

members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

79. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

80. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Defendants has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

a. Whether Defendants' alleged misconduct misled or had the tendency to mislead consumers;

b. Whether Defendants engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

c. Whether Defendants' alleged conduct constitutes violations of the laws asserted;

d. Whether Defendants breached their warranty with consumers;

e. Whether Plaintiff and members of the Class were harmed by Defendants' misrepresentations;

f. Whether Defendants were unjustly enriched;

g. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

h. Whether an injunction is necessary to prevent Defendants from continuing to engage in the wrongful conduct described herein.

81. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendants' records. Defendants have the administrative capability through their computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

82. It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

83. Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendants, as described herein.

84. Plaintiff is a more than adequate representative of the Class in that Plaintiff is Defendants' customer and has suffered damages as a result of Defendants' misrepresentations. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

85. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

86. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

87. All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

88. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

89. To the detriment of Plaintiff and the Class, Defendants have been, and continue to be, unjustly enriched as a result of its wrongful conduct alleged herein.

90. Plaintiff and the Class conferred a benefit on Defendants.

91. Defendants unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendants to retain.

92. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

93. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendants as a result of their inequitable conduct as more fully stated herein.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

94. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

95. Plaintiff and Defendants have contracted for the purchase of merchandise and the WorryNoMore Warranty.

96. Defendants breached the terms of the contract as described herein by denying coverage of valid claims.

97. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

98. Plaintiff and members of the Class have sustained damages as a result of Defendants' breach of the contract.

**THIRD CLAIM FOR RELIEF**
**Violation of New York General Business Law Section 349 *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class, against Defendant Macy's)**

99. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

100. This cause of action is asserted on behalf of the Class, whose members enjoy the protections of Article 22-A of the New York General Business Law, the Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a)

101. On information and belief, Macy's decisions concerning the WorryNoMore Warranty are made out of Macy's New York headquarters.

102. Macy's policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who made online purchases from Macy's.

103. The complained-of policies and practices were and are misleading in a material respect, because Macy's deceived reasonable consumers into purchasing WorryNoMore Warranties with the knowledge that the warranty did not provide the repair or replacement Macy's promised.

104. Reasonable consumers, like Plaintiff, would not knowingly choose to purchase the WorryNoMore Warranty, absent Defendant's deception.

105. Plaintiff and the Class were injured as a result of Macy's policies and practices, in that they were charged Product Protection fees in a deceptive manner as described herein.

106. Macy's actions were willful and knowing.

107. As redress for Macy's repeated and ongoing violations of these consumer protection statutes, Plaintiff and the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

**FOURTH CAUSE OF ACTION**
**False Advertising – N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff and the Nationwide Class, against Defendant Macy's)**

108. The preceding allegations are incorporated by reference.

109. N.Y. Gen. Bus. Law § 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

110. On information and belief, Macy's decisions concerning the WorryNoMore

Warranty are made out of Macy's New York headquarters.

111. Defendant's actions regarding the WorryNoMore Warranty, as described herein, constitutes false advertising in the conduct of the business trade or commerce of footwear.

112. Plaintiff and the Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 350.

113. Defendant's false advertising occurred, and continues to occur, in the course of Defendant's business.

114. As an actual and proximate result of Defendant's misconduct, Plaintiff and the New Class were injured and suffered damages.

115. As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiff and the Class each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class demands a jury trial on all claims so triable and judgment as follows:

(a) Certification for this matter to proceed as a class action on behalf of the Class;

(b) Declaring Defendants' WorryNoMore Warranty denial practices and policies to be improper;

(c) For declaratory and injunctive relief as set forth above;

(d) For an order requiring Defendants to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(e) For compensatory damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: September 9, 2026 2026

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**KALIELGOLD PLLC**
Amanda Rosenberg
950 Gilman Street, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783
*arosenberg@kalielgold.com*

*Attorneys for Plaintiff and the Putative Class*